**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: Goldblatt's Bargain Stores, Inc. | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| LaSalle Bank N.A. | ) | No. 04 C 3024 |
| | ) | |
| Plaintiff | ) | HONORABLE DAVID H. COAR |
| v. | ) | |
| | ) | |
| Great American Group, Inc. | ) | |
| | ) | Bankruptcy Case No. 02 B 43578 |
| Defendant | ) | Bankruptcy Adv. No. 03 A 2234 |
| | ) | |
| | ) | Appeal From the Honorable |
| | ) | Judge Eugene R. Wedoff |

**MEMORANDUM OPINION AND ORDER**

Before this court is Plaintiff LaSalle Bank, N.A.'s ("LaSalle") motion to dismiss for lack of subject matter jurisdiction against Defendant Great American Group, Inc. (GAG). For the reasons set forth below, LaSalle's motion to dismiss is denied.

**Facts**

The facts are not disputed. LaSalle was Goldblatt's Bargaining Stores, Inc.'s ("Goldblatt's") primary lender and held a security interest in substantially all of Goldblatt's assets, including its inventory. Goldblatt's financial situation worsened in early 2003, and it

decided to liquidate its inventory and close all of its stores. Goldblatt's entered into Agency Agreements with GAG, a commercial liquidator, to conduct the "Going Out of Business" sales.

Pursuant to the Agency Agreement, GAG agreed to pay a "Guaranteed Amount" to Goldblatt's based on its preliminary valuation of the inventory. That agreement also provided that GAG would pay 85% of the estimated Guaranteed Amount in advance of sale of all of the inventory. Goldblatt's agreed that to the extent that its actual physically counted inventory proved to be less than that set forth in its financial records (upon which GAG allegedly relied in calculating the guaranteed payment), Goldblatt's would "refund" a portion of the estimated guaranteed payment (the "85% payment") to GAG to compensate it for the deficiency in the inventory.[1] Upon payment of the 85% of the estimated Guaranteed Amount, GAG acquired a lien on the inventory. Because of LaSalle's lien on the inventory, GAG, Goldblatt's and LaSalle also entered into a Letter Agreement on February 14, 2003, wherein LaSalle consented to the provisions of the Agency Agreement, and GAG and Goldblatt's agreed that GAG would pay the Guaranteed Amount directly to LaSalle to reduce Goldblatt's debt to LaSalle.[2] In consideration of the receipt of 85% of the estimated Guaranteed Amount, LaSalle agreed to subordinate its security interests in Goldblatt's inventory to GAG. LaSalle also consented to the Agency

---

[1] It is unclear when the payment of the 85% Guaranteed Amount occurred in relationship to the sale of the inventory. However, the language of the agreement appears to contemplate payment of the 85% Guaranteed Amount prior to the completion of the sale of the inventory by GAG, on May 5, 2003.

[2] The exact formula for payment was set forth in paragraph 11.1( r) of the Agency Agreement, and contemplated that the aggregate Retail Price of the inventory was between $6,075,000 and $6,900,000.

Agreement, including the provision regarding the return of any overpayment of the Guaranteed Amount to GAG.

Prior to the commencement of the bankruptcy case, GAG took possession of Goldblatt's inventory, sold some of it and retained all of the proceeds. The final sales were completed in early May 2003. Shortly thereafter, GAG asserted that there was a deficiency in Goldblatt's inventory and a shortfall between the actual aggregate retail price and the retail price (what the inventory was really worth), and the 85% payment exceeded the 43% of actual retail price to which Goldblatt's and LaSalle were entitled. Pursuant to the February 14, 2003 Letter Agreement, GAG made a demand upon LaSalle to refund the difference, approximately $1 million. LaSalle disputed GAG's claim.

On March 11, 2003, Goldblatt's filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On May 13, 2003, the Trustee moved to assume the GAG Agency Agreements, elevating GAG's otherwise unsecured deficiency claim under the Agency Agreement to an administrative claim. The bankruptcy court approved the assumption of the Agency Agreement, with a reservation of rights.

On July 6, 2003, the Trustee commenced the underlying adversary proceeding joining LaSalle and GAG to determine the amount, validity and priority of interests in the "Guaranteed Amount Refund." At the time the Trustee commenced the adversary proceeding, Goldblatt's inventory had been sold and all of the proceeds were being held by GAG pursuant to the Agency Agreement. GAG asserted a cross claim against LaSalle and Goldblatt's as joint obligors to recover the alleged overpayment on the 85% of the estimated Guaranteed Amount pursuant to

the February Letter Agreement. GAG also sought allowance of an administrative claim against the Goldblatt's estate under section 503(b) and 507(a)(1) of the Bankruptcy Code.

On March 4, 2004, the Bankruptcy court entered judgment in favor of GAG and against LaSalle on Counts I, II and IV of the cross claim in the amount of $1,086,094.68. The bankruptcy court entered judgment "in favor of GAG against the Trustee on Counts I, II, III of the counterclaim in the amount of $995,848.00, which constitutes an administrative claim against the bankruptcy estate under Section 503(b) and 507(a)(1)...provided that this judgment amount would be reduced by the amount of the judgment against LaSalle under Counts I, II and IV (or eliminated if such amount is higher) once the Judgment of LaSalle becomes subject to a final and no longer appealable order." LaSalle appealed the judgment and GAG filed a cross appeal. In the appeal, LaSalle has filed the instant motion attacking the subject matter jurisdiction of the Bankruptcy Court as to GAG's claim against it, and seeks an order remanding the case to the Bankruptcy Court with direction to dismiss GAG's cross claim.

**Legal Standard**

Appellate review of a bankruptcy court's factual findings is for clear error, while review of its legal conclusions is *de novo*. *In re Fedpak Sys.*, 80 F.3d 207 (7th Cir. 1996). Whether the Trustee had standing to initiate the adversary proceedings, and whether the Bankruptcy court had "related to" jurisdiction are questions of federal statutory and constitutional law. As such, this court addresses the issue of subject matter jurisdiction *de novo*.

**Analysis**

LaSalle challenges the subject matter jurisdiction of the Bankruptcy court on two grounds: (1) the Trustee lacked Standing to initiative the adversary proceedings, and (2) the Bankruptcy Court did not have "related to" jurisdiction under 29 U.S.C. §§ 157(A) and 1334(B). This court now addresses each in turn.

**A. Trustee Standing**

The Trustee is obligated to distribute the estates to its creditors according to the priorities of the Bankruptcy Code. The question is what affect, if any, did the Agency Agreement and Letter Agreement have on the Trustee's administration of the bankruptcy estate ("Estate"). Did LaSalle take the 85% payment in full satisfaction its claims, and not subject to the risk of refund, in which case, the Estate alone bears the risk of a deficiency? Or, does LaSalle take the 85% payment subject to the risk of having to refund in the event of a deficiency, in which case LaSalle has an unsecured claim against the Estate for the amount refunded? In either case, the administration and distribution of the Estate is directly affected by the interpretation and adjudication of both the Agency Agreement and the Letter Agreement. It determines whether the Estate is subject to liens under GAG or LaSalle. The rights and duties of all three parties were intertwined in the agreements in such a way that necessarily affected the Trustee and how he carried out his duties.

Article III of the United States Constitution confers on the federal courts jurisdiction over cases and controversies. *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994). It restricts the jurisdiction of the federal courts to actual controversies in which the litigants have a personal stake. U.S. Const. Art. III §2; *In re Fedpak Sys.*, 80 F.3d 207, 211 (7th Cir. 1996). A

bankruptcy court, like any other federal court, requires that a party has "a personal stake in the outcome of a controversy" in order to have standing to initiate the proceeding. LaSalle argues that the Trustee did not have standing to initiate the adversary proceedings, because the Estate had no interest in the subject matter in dispute–the deficiency payback of the "Guaranteed Amount." LaSalle asserts that this dispute involves solely GAG's contract claim against LaSalle. As stated above, this is simply not the case. The resolution of GAG's contract claim against LaSalle has a direct impact on whether the Trustee must pay the deficiency amount to GAG or, whether the Estate acquires an unsecured lien under LaSalle, if LaSalle is found liable to GAG.

Under section 725 of the Bankruptcy Code, the Trustee is given the duty of disposing of the Estate property, including any liens on the Estate. This gives the Trustee standing to seek the court's determination on the validity and priorities of the liens on the Estate, provided that the determination would affect the administration and disposition of Estate property. As stated above, both the Agency Agreement and the Letter Agreement have a direct impact on the disposition of Estate property–whether the Estate is subjected to a lien under GAG or LaSalle. This gives the Trustee a personal stake in the claim, and confers standing to initiate the adversary proceedings.

### B. "Related To" Jurisdiction

A bankruptcy court has jurisdiction only over "civil proceedings arising under title 11, or arising in or related to cases under title 11," to the extent those cases are referred to it by the district court. 28 U.S.C. §1334(b), §157(a). This limitation restricts the bankruptcy court's jurisdiction to cases involving the debtor directly, and cases that affect the amount of property in the bankrupt estate. *Zerand-Bernal Group v. Cox,* 23 F.3d 159 (7th Cir. 1994). A case "arises

under" Title 11 and is within the core jurisdiction of the court when the cause of action is based on a right or remedy expressly provided in the Bankruptcy Code. *Doctors Hosp. of Hyde Park, Inc. v. Desnick* (In re Doctors Hosp. of Hyde Park, Inc.), 308 B.R. 311, 317 (Bankr. D. Ill. 2004). "Related to" jurisdiction exists over matters when they affect the amount of property for distribution from the estate or the allocation of property among creditors. *In re Memorial Estates, Inc.*, 950 F.2d 1364 (7th Cir. 1991); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987). The Seventh Circuit takes a narrow view of "related to" jurisdiction, stating that "bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets." 813 F.2d at 131.

In the present case, the Bankruptcy court had subject matter jurisdiction over the adversary proceedings, GAG's administrative claim against the Trustee, and GAG's contract claim against LaSalle. Prior to the Agency Agreement and Letter Agreement, LaSalle had a lien on Goldblatt's inventory. LaSalle's position seems to be that the value of the inventory was less than the amount owed to LaSalle, and therefore, determining the "validity and extent" of the LaSalle lien was an idle exercise. Moreover, LaSalle posits, after payment of 85% of the estimated Guaranteed Amount, LaSalle's lien interest was subordinated to GAG's lien, but the value of the inventory did not increase; therefore, LaSalle argues, Goldblatt's stake in the extent of the liens was nil.

LaSalle ignores the fact that "retail value" of the inventory would affect the amount of any "payback" or "refund" to GAG under the Agency Agreement, and a determination of GAG's claim against Goldblatt's. The parties assume, and the Bankruptcy Court held, that the amount of any refund liability on the Agency Agreement would constitute an administrative claim because

Goldblatt's assumed the Agreement in the Bankruptcy Proceeding. Thus, under U.S.C. §503(b) and §725, the Bankruptcy Court had core jurisdiction over GAG's claims against Goldblatt's.

Similarly, to the extent that the payment received by LaSalle (85% of the estimated Guaranteed Amount) was less than the entire indebtedness to LaSalle, secured by the inventory, LaSalle would be entitled to an unsecured claim (see §506(a)) against Goldblatt's. The calculation of the amount of any such unsecured claim would be affected by the amount, if any, LaSalle would be required to refund to GAG under the Letter Agreement. LaSalle can claim that it had no obligation to refund under the Letter Agreement, but that assumes an interpretation of the Letter and Agency Agreement that is not obvious from a literal reading of either document. It should be noted that there was also a question as to the reduction of any amounts owing to GAG on its administrative claim for any refund obtained from LaSalle. Therefore, the Bankruptcy court had core jurisdiction to determine the amount, if any, of LaSalle's unsecured claims against the Debtor.

Finally, there is GAG's cross claim against LaSalle. LaSalle argues that the issue of any duty on LaSalle's part to refund money to GAG was a matter outside of the jurisdictional concern of the Bankruptcy court. In the abstract, LaSalle may have a point; however, as the Bankruptcy Court noted, the relationship and obligations of the three parties–LaSalle, Goldblatt's and GAG–were so intertwined that it would be impossible for the Bankruptcy court to make the determinations that had to be made in order to administer the bankruptcy case without addressing GAG's claim against LaSalle. *See* 28 U.S.C. §157(b)(2)(A), (B), and (D). Thus, the exercise of jurisdiction over the cross claim was appropriate.

**Conclusion**

For the foregoing reasons, LaSalle's motion to dismiss for lack of subject matter jurisdiction is denied.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **April 3, 2007**